UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KURT CHRIST and JOANNE FIOLA,<br><br>Plaintiffs,<br><br>v.<br><br>SANTANDER BANK, N.A. and<br>BRETT KILMER<br><br>Defendants. | Civil Action No. 1:17-cv-11828-PBS |

## DEFENDANTS SANTANDER BANK, N.A. AND BRETT KILMER'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendants Santander Bank, N.A. ("Santander") and Brett Kilmer ("Mr. Kilmer") (collectively, the "Defendants"), pursuant to Fed. R. Civ. P. 12(b)(6), respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the First Amended Complaint ("First Amended Complaint") filed by Plaintiffs Kurt Christ ("Mr. Christ") and Joanne Fiola ("Ms. Fiola") (collectively, the "Plaintiffs").

## BACKGROUND

On or about July 2014, Plaintiffs and Tim Bowder ("Mr. Bowder") met with Mr. Kilmer, a branch manager with Santander, at a Friendly's restaurant to discuss the opening of a business bank account (the "Bank Account") with Santander in the name of TLT Development, LLC ("TLT").[1] *See* First Amended Complaint ¶¶ 8-9. The Plaintiffs and Mr. Bowder were business partners in the formation of TLT, a corporation formed to buy and sell real estate. *Id.* ¶ 8. Plaintiffs claim that at the meeting in July 2014, they requested the Bank Account to have a dual

---

[1] Santander accepts as true the allegations contained in Plaintiffs' First Amended Complaint solely for the purpose of this motion.

1

signature requirement that would only permit the withdrawal of funds from the Bank Account if two signatures were first obtained. *Id.* ¶ 10. Plaintiffs claim that Mr. Kilmer affirmed that the dual signature restriction would be in place on the Bank Account. *Id.* ¶ 11.

Plaintiffs and Mr. Bowder then opened the Bank Account with Santander, and Mr. Christ funded the Bank Account with an initial deposit of $327,383.45. *Id.* ¶ 16. Mr. Christ was the silent partner who would not be involved in the daily operations of the business. *Id.* ¶ 10. In opening the Bank Account, Plaintiffs and Mr. Bowder executed a Universal Resolution (attached hereto as Exhibit A) and an On-Site Business New Account Opening Application ("Application") (attached hereto as Exhibit B).[2] In executing the Universal Resolution, Plaintiffs agreed that:

**Payment Orders**

RESOLVED: That the Bank be, and hereby is, authorized and directed to certify, pay or otherwise honor all checks, drafts, notes, bills of exchanges, acceptances, undertakings and other instruments or orders for the payment, transfer or withdrawal of money for whatever purpose and to whomsoever payable when such instruments and orders are properly made, signed, or endorsed by the signature, the actual or purported facsimile signature or the oral direction of any of the authorized signers below…; and

**Funds Transfers**

RESOLVED: That any of the authorized signers below acting alone be, and hereby is, authorized on behalf of the Depositor to instruct, orally or by such other means as the Bank may make available to Depositor, the Bank to initiate the transfer of funds by wire, telex, automated clearinghouse, book entry, computer or such other means …; and

---

[2] Santander properly attaches the Universal Resolution and Application signed by Plaintiffs without converting the instant motion to dismiss into a motion for summary judgment, as the Universal Resolution is an essential contract governing the relationship between the parties relative to the subject bank account in this action. Further, the Plaintiffs reference the opening of the Bank Account in their First Amended Complaint and allege that the parties agreed that the Bank Account was to have certain restrictions and security characteristics which are at issue in the present action. "A court may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment." *In re Credit Suisse-AOL Sec. Litig.*, 465 F. Supp. 2d 34, 38 (D. Mass. 2006); *Swack v. Credit Suisse First Boston*, 383 F. Supp. 2d 223, 232, fn. 9 (D. Mass. 2004).

**Additional Resolutions**

> RESOLVED: That the Bank may rely on any signature, endorsement or order and any facsimile signature or oral instruction reasonably believed by the Bank to be made by any authorized signer, and the Bank may act on any direction of an authorized signer without inquiry and without regard to the application of the proceeds thereof, provided that the Bank acts in good faith[.]

Exhibit A at 1-2. Further, Plaintiffs, in executing the Application, agreed to the terms of and acknowledged receipt of the Santander Business Account Agreement ("BAA") (attached hereto as Exhibit C), which expressly provides:

> You agree to examine your statements promptly after you receive it or we make it available to you. Unless we hear otherwise from you within 30 calendar days from the date we mailed the statement or made it available to you, we will deem the statement and all transactions reflected therein, including the payment of any check or the amount of any deposit, to be accurate and proper, and you agree that you will not make any claim against us with respect to that statement or the transactions reflected therein after this 30-day period.

Exhibit C at 12.[3]

Plaintiffs allege that the Bank Account was not protected with a dual signature restriction and, beginning on August 4, 2014, Mr. Bowder was permitted to make alleged unauthorized withdrawals from the Bank Account resulting in the total depletion of the funds. *See* First Amended Complaint ¶¶ 15-16. A review of the monthly statements on the Bank Account confirms a starting balance of $327,383.45 as of July 18, 2014; an initial withdrawal of funds on August 4, 2014; and an ending balance of $0.00 as of January 4, 2017.[4] *See* Statements for TLT ("TLT Statements"), attached hereto as Exhibit D.

Plaintiffs allege that Mr. Christ first contacted Mr. Kilmer to report the disputed transactions in December 2015. *See* First Amended Complaint ¶ 20. Plaintiffs allege that Mr.

---

[3] Santander properly attaches the BAA without converting the instant motion to dismiss into a motion for summary judgment. *See* Note 2, *supra*, for authority.

[4] Santander properly attaches the bank statements it sent to TLT Development for the months July 2014 to January 2017 for the Court to review without converting the instant motion to dismiss into a motion for summary judgment. *See* Note 2, *supra*, for authority.

Christ then met with Scott Baran of Santander on June 28, 2016 to report the disputed transactions. *Id.* ¶ 21.

**PROCEDURAL BACKGROUND**

Plaintiffs filed their original Complaint in the Superior Court for Bristol County on August 3, 2017, and effected service of the original Complaint on Santander on or about August 25, 2017. On September 22, 2017, Santander timely removed this matter to the United States District Court for the District of Massachusetts based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs filed their First Amended Complaint on October 19, 2017. On November 6, 2017, Defendants obtained an extension of time to respond to the First Amended Complaint, setting November 15, 2017 as the new deadline. Plaintiffs bring three (3) causes of action against Defendants: Count I (Negligent Misrepresentation), Count II (Violation of G.L. c. 93A), and Count III (Violation of G.L. c. 106 § 4A-204).

**STANDARD OF REVIEW**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hochendoner v. Genzyme Corp.*, 2015 WL 1333271, at *3 (D. Mass. Jan. 2015) (J. Woodlock) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court first should "identify [] and disregard [] statements in the complaint that merely offer 'legal conclusion[s] couched as ... fact' or '[t]hreadbare recitals of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Then, a court should look at the remaining factual allegations in the complaint "to evaluate whether, taken as a whole, they state a facially plausible legal claim." *Id.*

4

"Naked assertion[s]' devoid of 'further factual enhancement" do not constitute adequate pleading." *Coyne v. Metabolix, Inc.*, 943 F. Supp. 2d 259, 265 (D. Mass. 2013) (J. Woodlock) (citing *Twombly*, 550 U.S. at 557). Additionally, "'conclusory allegations' and bare assertions... amount[ing] to nothing more than a 'formulaic recitation of the elements' are not entitled to the presumption of truth." *Coyne*, 943 F. Supp. 2d at 265 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Unless the alleged facts push a claim 'across the line from conceivable to plausible,' the complaint is subject to dismissal." *Coyne*, 943 F. Supp. 2d at 265 (citing *Iqbal*, 556 U.S. at 678).

"Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Hochendoner*, 2015 WL 133327, at *3.

## ARGUMENT

I. **THE UCC BARS PLAINTIFFS FROM RECOVERING NO MORE THAN $140,212.23 DUE TO PLAINTIFFS' FAILURE TO TIMELY OBJECT TO THE FUND TRANSFERS, WITHDRAWALS AND CHECK WITHIN ONE YEAR**

A. **The MA UCC Requires Plaintiffs to Object to Electronic Fund Transfers Within One Year**

Chapter 106 of Massachusetts General Laws codifies the Massachusetts version of the Uniform Commercial Code ("UCC"). Specifically, G.L. c. 106, § 4A-505 ("Preclusion of Objection to Debit of Customer's Account") provides:

> If a receiving bank has received payment from its customer with respect to a payment order issued in the name of the customer as sender and accepted by the bank, and the customer received notification reasonably identifying the order, the customer is precluded from asserting that the bank is not entitled to retain the payment unless the customer notifies the bank of the customer's objection to the payment within one year after the notification was received by the customer.

5

Section 4-A of the UCC applies to electronic fund transfers and pre-empts common law causes of action including negligence or fraud in circumstances covered by the Article. *See* Official Comment to § 4A-102 (Article 4A is "intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article"). Thus, § 4A-505 "covers not only erroneous execution of orders, but also cases of unauthorized and unverified orders, i.e., those done by fraud." White & Summers, Uniform Commercial Code § 24-8 (4th Ed. 1995). The one year limit for the customer to object is invariable; it is a "period of repose" and "the obligation to refund may not be asserted by the customer if the customer has not objected to the debiting of the account within one year after the customer received notification of the debit." *Grabowski v. Bank of Boston*, 997 F. Supp. 111, 119 (D. Mass. 1997), (quoting Official Comments to G.L. c. 106, § 4A-505); *see also Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3rd 84, 90 (2nd Cir. 2010) (interpreting § 4A-505 of the New York UCC – which is identical to G.L. c. 106, § 4A-505 – and affirming the District Court's dismissal of Plaintiff's claim based on failure to provide notice to the bank of alleged unauthorized electronic wire transfers pursuant to §4A-505).

Applied to the instant case, the one year limit pursuant to Section 4A-505 bars Plaintiffs recovery with respect to ***all*** electronic fund transfers and withdrawals that Mr. Bowder made from the Bank Account ***prior to December 2014***. Beginning in July 2014, Santander provided Plaintiffs with monthly statements concerning all transactions on TLT's Bank Account. *See* Exhibit D. Santander sent the monthly bank statements to the address that the Plaintiffs and Mr. Bowder indicated on the Application. *See* Exhibit B. The First Amended Complaint alleges that Mr. Christ first contacted Mr. Kilmer to report the disputed transactions in December 2015. *See* First Amended Complaint ¶ 20. Relying on December 2015 as the date that Plaintiffs first

6

notified Santander of the unauthorized transactions,[5] under Section 4A-505, Plaintiffs are barred from challenging any electronic fund transfer and withdrawal made by Mr. Bowder on the Bank Account on or before December 2014. As of November 28, 2014, the Bank Account had a remaining balance of $140,212.23, and Plaintiffs received notice of this remaining balance in December 2015. *See* Exhibit D. Because §4A-505 bars Plaintiffs from recovering any amount debited from the Bank Account via an electronic fund transfer that they had not objected to within one year after receiving notification, Plaintiffs are barred from recovering any amount over $140,212.23 as a matter of law. Accordingly, this Court should dismiss any claims arising from electronic funds transactions prior to December 2014.

### B. The MA UCC Requires Plaintiffs to Object to Debited Checks Within One Year

Like Section 4A-505, G.L. c. 106, § 4-406(f) bars recovery for claims based on the unauthorized signature of a paper check if the customer fails to notify the bank within one year of receipt of notification of the debited check. A "banking customer has a duty to discover and report any unauthorized signatures or endorsements to the bank within one year." *Callahan v. Wells Fargo & Co.*, 747 F. Supp. 2d 247, 252 (D. Mass. 2010); *see also Union Street Corridor-Community Development Corporation v. Santander Bank, N.A.*, 191 F. Supp. 3d 147, 150-153 (D. Mass. 2016); *Sullivan Surveying Co., LLC v. TD Bank N.A.*, 2015 WL 4207133, at *1 (D. Mass. July 10, 2015).

This absolute time bar applies "[w]ithout regard to care or lack of care of either the customer or the bank." G.L. c. 106, 4-406(f). Different than a statute of limitations, this one year time frame "is a statutory prerequisite of notice. It does not govern the time within which an action must be commenced but rather governs the time within which a party to a contract is

---

[5] For purposes of this motion only, Defendants accept as true the allegations contained in Plaintiffs' First Amended Complaint.

7

obligated to act." *Karmin Door Co. v. BankBoston, N.A.*, 2000 WL 559378, at *2 (Mass. Super. Mar. 22, 2000). Accordingly, Massachusetts law indisputably holds that a "customer who does not within one year...discover and report the customer's unauthorized signature...is precluded from asserting it] against the bank." *Callahan*, 747 F. Supp. 2d at 252. Section 4-406(f) implements a one-year notice period to limit bank liability because customers are most likely to notice fraudulent activity on their own account. *Grassi Design Grp., Inc. v. Bank of Am., N.A.*, 74 Mass. App. Ct. 456, 457 (2009); *See also Karmin Door Co.*, 2000 WL 559378, at *4 (observing "[h]ad another employee of [plaintiff] monitored [its office manager's] activities and examined the statements during this period, he or she would have discovered the forgeries" in a timely fashion).

Here, the one year limit pursuant to Section 4-406(f) bars Plaintiffs recovery with respect to a check purchase against the Bank Account dated October 29, 2014 in the amount of $7,044.85. *See* Exhibit D. This withdrawal via a check purchase appears on the account statement for the period of October 1, 2014 to October 31, 2014, which Santander previously sent to the Plaintiffs. *Id.* Beginning in July 2014, Santander provided Plaintiffs with monthly statements concerning all transactions on TLT's Bank Account. *Id.* Relying on December 2014 as the date that Plaintiffs first notified Santander of the unauthorized transactions, under Section 4-406(f), Plaintiff would be barred from challenging the October 29, 2014 check purchase because more than one year had passed since Santander sent Plaintiffs the TLT Bank Statements. Therefore, this court should dismiss Plaintiffs' claim to the October 29, 2014 check transaction and find that Plaintiffs cannot recover any amount over $140,212.23 as a matter of law.

8

### C. The MA UCC Precludes Plaintiffs' Claim of Negligent Misrepresentation

Plaintiffs' common law claim of Negligent Misrepresentation (Count I) is barred by Sections 4-406(f) and 4A-505 of the MA UCC because "the UCC provides a comprehensive scheme for the enforcement of rights and allocation of losses that would be effectively undermined by application of conflicting common-law principles." *Reading Coop. Bank v. Suffolk Constr. Co.*, 464 Mass. 543, 549 (2013); *Gossels v. Fleet Nat'l Bank*, 453 Mass. 366, 370, (2009); *Sullivan Surveying Co., LLC*, 2015 WL 4207133, *3.

Specifically, the MA UCC supplants common law claims in cases alleging check fraud that are governed by the Bank Statement Rule. *Cook v. Bank of America, N.A.*, 2012 WL 5240588, at *7-8, (Super. Ct., Aug. 2, 2012) (collecting cases supporting that "[w]here a UCC provision specifically defines parties' rights and remedies, it displaces analogous common-law theories of liability" and dismissing negligence claim); *Cyran v. Sovereign Bank*, 2008 WL 2510146, at *4 (D. Mass. June 10, 2008) (finding § 4-406 preempts common law conversion claim); *Karmin Door Co, 2000 WL 559378, at *4* (stating UCC bars negligence claims in Bank Statement Rule cases); *Arkwright Mut. Ins. Co. v. State St. Bank & Trust Co.*, 428 Mass. 600, 606 (1998) (dismissing negligence claim because § 4-406 "bars the bank's liability regardless of the theory on which plaintiff relies").

In cases involving disputed electronic fund transfers, courts have similarly held that the UCC displaces common law theories of liability. Although it does not appear that the First Circuit has had an occasion to consider whether Section 4A-505 bars common law claims, case law from the Second Circuit is instructive. In *Merrill Lynch*, the Second Circuit analyzed the history of Section 4A-505 of the UCC (which is identical to the Massachusetts version) and held

9

that Section 4A-505 precludes common law claims that are at odds with Article 4A. *See* 597 F.3rd at 89. Notably, the court wrote:

> The drafters [of the UCC] made clear that Article 4A reflects "a deliberate decision ... to write on a clean slate and to treat a funds transfer as a unique method of payment to be governed by unique rules that address the particular issues raised by this method of payment." N.Y. UCC § 4–A–102 cmt. The statute of repose in N.Y. UCC Section 4–A–505 is one such "unique rule." *See id.* Prior to Article 4A's adoption, courts resolved disputes over funds transfers in part by "referring to general principles of common law or equity." *Id.* Article 4A rejected this piecemeal approach in favor of a more disciplined regime under which *common law claims at odds with Article 4A are no longer permitted. Article 4A precludes customers from bringing common law claims inconsistent with the statute*: "[R]esort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities *inconsistent* with those stated in this Article."

*Merrill Lynch*, 597 F.3rd at 89 (emphasis added). *See also Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 102-03 (2nd Cir. 1998).

For the same reasoning that the Second Circuit adopted in holding that Section 4A-505 of the New York UCC bars common law claims, this Court should dismiss Plaintiffs' Negligence Misrepresentation claim because the drafters of Sections 4-406(f) and 4A-505 of the Massachusetts UCC intended for the UCC to provide a disciplined and comprehensive framework for the enforcement of rights that displaces principals of common law and equity. *Reading Coop. Bank,* 464 Mass. at 549; *Gossels*, 453 Mass. at 370; *Sullivan Surveying Co., LLC*, 2015 WL 4207133, *3. Thus, it would not make sense for this court to recognize the validity of G.L. c.106 §§ 4 and 4A as well as the viability of Plaintiff's negligent misrepresentation claim which is based in common law because such a position is at odds with state law.

## II. THE BAA BARS PLAINTIFFS' CLAIMS

Plaintiffs' First Amended Complaint must be dismissed because they cannot state a claim to relief that is plausible on its face." *Hochendoner* at *3, *supra* (citing *Iqbal*, 556 U.S. at 678).

"Under Massachusetts Law, parol evidence may not be admitted to contradict clear terms of an agreement, or to create ambiguity where none exists." *Governor Apartments Inc. v. Carney*, 342 Mass. 351, 354 (1961); *Tupper v. Hancock*, 319 Mass. 105, 108 (1946); *Farber v. Mutual Life Ins. Co. of New York*, 250 Mass 250, 253 (1924). "A contract is only ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken." *Clinical Technology, Inc. v. Covidien Sales, LLC*, 192 F. Supp. 3d 223, 232 (D. Mass. 2016) citing *Farmers Ins. Exch. v. RNK, Inc.*, 635 F. 3d 777, 783 (1st Cir. 2011). "A contract is not ambiguous just because the parties disagree about its meaning." *Id*. "If the contract is found free from ambiguity, the Court must interpret it according to its plain terms, taking 'the words within the context of the contract as a whole, rather than in isolation.'" *Clinical Technology*, 192 F.Supp. at 232 (quoting *Barclays Bank PLC v. Poynter*, 710 F. 3d 16, 21 (1st Cir. 2013)).

Plaintiffs agreed to the terms of the BAA pursuant to the Applications that they signed. *See* Exhibits B-C. Indeed, the BAA expressly provides that Plaintiffs agreed to review all account statements promptly and object to any withdrawal or fund transfer within 30 calendar days or else Santander would "deem the statement and all transaction reflected therein, including payment of any check or the amount of any deposit, to be accurate and proper…" Exhibit C at 12.

Furthermore, analogous and corresponding to the 30-day notice requirement specified in the BAA, all monthly account statements from Santander contain the following in bold type at the bottom of each statement:

> Please contact us if you think your statement or receipt is wrong or if you need additional information about a transfer on the statement or receipt. We must hear from you no later than 30 days after we sent you the FIRST statement on which the error appeared.

11

*See* Exhibit D. Therefore, Plaintiffs were contractually required to give Santander notice of any unauthorized fund transfer or withdrawal within thirty (30) days, and they failed to do so until December 2015. At which point the Bank Account balance was $1,525.57. *See* Exhibit D.

### III. PLAINTIFFS FAIL TO PLEAD ANY UNFAIR OR DECEPTIVE BUSINESS PRACTICE BY DEFENDANTS

#### A. Plaintiffs Have Failed to Send a Demand Letter Required by G.L. c. 93A, § 9

A condition precedent for filing suit under G.L. c. 93A, §9 is the sending of a demand letter thirty (30) days prior to suit. The demand must, at a minimum, describe with reasonable specificity the acts complained of, set forth the injury suffered, and give reasonable notice that a demand is being made under c. 93A. M.G.L. c. 93A, § 9. *See MacKenzie v. Auto Supermart, Inc.*, 1988 Mass. App. Div. 5, 7 (1988) ("[i]t is now well established that the demand letter listing the specific deceptive practices claimed is a prerequisite to suit and must be alleged and proved."). Although there is no precise test for determining when conduct crosses the line to become unfair or deceptive for purposes of Chapter 93A, Massachusetts courts will consider whether conduct is deceptive if the act has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently than they otherwise would have acted. *See Aspinall v. Philip Morris Cos. Inc.*, 442 Mass. 381, 396-397 (2004); *Kattar v. Demoulas*, 433 Mass. 1, 13-14 (2000). Massachusetts courts, in considering whether a particular act or practice violates the unfairness prong of Chapter 93A: "look to (1) whether the practice ... is within at least the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." *Mass. Eye & Ear*

*Infirm. v. QLT Phototh, Inc.*, 412 F.3d 215, 243 (1st Cir. 2005) (quoting *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975)).

As part of their First Amended Complaint, Plaintiffs are required to allege that they sent Defendants a demand letter. *Id.* The First Amended Complaint, however, does not allege that Plaintiffs sent Defendants the prerequisite demand letter. This, alone, warrants dismissal of Plaintiffs' claim under G.L. c. 93A. *See Ball v. Wal-Mart, Inc.*, 102 F. Supp. 2d 44, 54 (D. Mass 2000) ("neither the plaintiff's complaint nor the documents attached thereto mention any such notification. That is sufficient ground to justify dismissal of the Chapter 93A claim."); *see also Belkin v. Fox*, 2015 WL 3616094, *4 (D. Mass. 2015); *Foley v. Wells Fargo Bank, N.A.*, 2013 WL 6489976, *6 (D. Mass. 2013).

### B. Plaintiffs Do Not Qualify to Bring An Action Under G.L. c. 93A, § 11

Plaintiffs may bring a cause of action under G.L. c. 93A, § 11 if they engage "in the conduct of any trade or commerce..." G.L. c. 93A, § 11. The general test applied by the courts to determine whether a 93A plaintiff is engaged in trade or commerce, and is thus required to bring suit under § 11, is whether a defendant's conduct giving rise to the alleged 93A violation occurred in connection with a plaintiff individual acting in a business context. *See Begelfer v. Najarian*, 381 Mass. 177, 190 (1980). In *Begelfer v. Najarian*, the SJC held that "The questions of whether a private individual's participation in an isolated transaction takes place in a "business context" must be determined from the circumstances of each case ... [and the court must assess] the nature of the transaction, the character of the parties involved, and the activities engaged in by the parties." *Id.* In *Kunelius v. Town of Stow*, the Court held that although plaintiff provided evidence that she had used the subject real property as a commercial horse farm, plaintiff failed to prove she was a § 11 plaintiff because there was no evidence that she had

13

engaged in trade or commerce with respect to the buying or selling of real property. *Kunelius v. Town of Stow*, 2008 WL 4372752 (D. Mass. 2008), affirmed, 2009 WL 3720925 (1st Cir. 2009). Similarly, in *Smith and DaSilva v. Jenkins, et al.*, the Court dismissed plaintiffs' § 11 business claim where the plaintiffs' "involvement in the real estate transaction[s] … was minimal … and [they] had no active management of the loan." *Smith and DaSilva v. Jenkins, et al.*, 626 F. Supp. 2d 155, 169 (D. Mass 2009).

Here, Ms. Fiola has failed to allege any involvement whatsoever with TLT and only alleges that she and Mr. Christ were partners in TLT and met on or about July 2014 with Mr. Kilmer to discuss the opening of a business bank account in TLT's name. First Amended Complaint ¶ 8. Ms. Fiola has failed to plead facts necessary to establish that the nature of her involvement with TLT was one which would allow her to bring suit under § 11. It is not known whether Ms. Fiola's involvement in TLT was for personal reasons or whether she was motivated by business considerations. *See Frullo v. Landenberger*, 61 Mass. App. Ct. 814 821 (2004) (The question of whether a party is liable under § 9 or § 11 pivots on whether a plaintiff has undertaken the subject transaction in question for business reasons, or has engaged in it for purely personal reasons.). It was Mr. Christ, not Ms. Fiola, who provided the funding for the Bank Account. First Amended Complaint ¶ 16. Ms. Fiola has failed to articulate any facts regarding her role or the activities she engaged in with regard to TLT, and has, thus, has failed to demonstrate that she is entitled to bring suit under § 11. As such, Ms. Fiola's First Amended Complaint fails to allege sufficient facts necessary for her to sustain a claim against Defendants under c. 93A, § 11.

Furthermore, Mr. Christ avers that he personally funded the Bank Account and intended to buy and sell real estate with Mr. Bowder through TLT. However, Mr. Christ was only "the

silent partner who would not be involved in the daily operations of the business." *Id.* ¶¶ 10, 16. Mr. Christ has failed to plead any facts evidencing the fulfillment of c.93A, § 11's requirement that he actively used the Bank Account to transact business. At most, he only intended to use the Bank Account to transact business through TLT but never did so during the time that Mr. Bowder depleted the Bank Account. *Id.* ¶19. Thus, Mr. Christ does not have an actionable claim pursuant to § 11 because he did not "conduct any trade or commerce" during the relevant time period. G.L. c. 93A, § 11. *See Begelfer, supra;* see also *All Seasons Servs., Inc. v. Commissioner of Health & Hosp. of Boston*, 416 Mass. 269, 271 (1993) (hospital did not act in business context where it entered into a contract for food services but it did not seek to profit from the transaction with food service vending company). Because § 11 requires Plaintiffs to actively engage in trade or commerce and because Plaintiffs have failed to plead or offer any evidence that they engaged in business activity beyond merely opening the Bank Account, they do not qualify to bring an pursuant to § 11. Plaintiffs' alleged 93A claim, if any, most likely falls under c. 93A, § 9.

### C. Plaintiffs Have Failed to Plead Sufficient Facts Needed to Sustain Recovery Under G.L. c. 93A

The First Amended Complaint fails to allege that Defendants engaged in any "immoral, unethical, oppressive, or unscrupulous" conduct so as to trigger a claim under Chapter 93A. *Mass. Eye & Ear Infirm.*, 412 F.3d at 243 (quoting *PMP Assocs., Inc.*, 366 Mass. at 596). Rather, Plaintiffs merely assert that Santander's conduct was unfair and deceptive. *See* First Amended Complaint ¶ 32. Such an assertion constitutes "conclusory allegations and bare assertions...amount[ing] to nothing more than a formulaic recitation of the elements." *Coyne*, 943 F. Supp. 2d at 265. Plaintiffs' allegations, without more, are insufficient to assert a claim under Chapter 93A and, accordingly, must be dismissed. *Id.*

## CONCLUSION

WHEREFORE, Defendants respectfully request that this Honorable Court grant their Motion to Dismiss Plaintiffs' First Amended Compliant as to all counts with prejudice.

**DEFENDANTS RESPECTFULLY REQUEST A HEARING ON THEIR MOTION.**

Respectfully Submitted,

**PARKER IBRAHIM & BERG LLC**
*Attorneys for Defendants,*
Santander Bank, N.A. and Brett Kilmer,

*/s/ Jeffrey D. Adams*
Jeffrey D. Adams, BBO # 662697
One Financial Center, 15th Floor
Boston, MA 02111
Phone: 617.918.7600
Facsimile: 617.918.7878
Email: jeffrey.adams@piblaw.com

Date: November 14, 2017

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

I, Jeffrey D. Adams, hereby certify that, prior to filing the instant motion, I contacted counsel for the Plaintiffs in order to confer in good faith to resolve or narrow the issues raised herein.

*/s/ Jeffrey D. Adams*
Jeffrey D. Adams

## CERTIFICATE OF SERVICE

I, Jeffrey D. Adams, hereby certify that a true and correct copy of the foregoing document was served upon all parties or counsel of record via this Court's CM/ECF system or, if not registered on this Court's CM/ECF system, then via first class mail, postage prepaid, on November 14, 2017.

<em>/s/ Jeffrey D. Adams</em><br>Jeffrey D. Adams